Good morning, Your Honors. May I please the Court? My name is Otis Felder. I'm representing the appellants in this case, Blue Water Boating, and Skip Abed. I'd like to reserve a few minutes for rebuttal, but I just wanted to start off the case. I apologize to the Court that the record is very thin, and that is because the District Court made a decision sua sponte right when the petition for exoneration was filed that the Court believed it didn't have subject matter jurisdiction. It took no evidence. We didn't have a hearing, and the Court just looked at the papers, made a decision. I'm sure Judge Hurwitz will somewhat appreciate kind of use the I know it when I see it test, and the Judge concluded that he didn't see it. So we're here today on appeal. The Judge saw everything, and the District Court saw everything except the last part of the jurisdictional test for admiralty, which is the connection test, that there be a substantial connection to maritime law or traditional maritime activity, and that was decided in an executive jet. The old test was just a location test if you were on the water. It used to be much easier. Right. But there was a reason for executive jet because we didn't want, as Justice Stewart said, an executive jet. We didn't want the federal courts to be flooded with cases with swimmer versus swimmer. So there had to be something more than just that kind of connection. Obviously in the facts of the executive jet, it wasn't even a vessel that was involved, and it was primarily over land. So of course it made sense in the factual basis of the case not to extend jurisdiction there, and the Court also said we're not, it didn't limit that if the case had been involved over water, it might on another case find that there was jurisdiction. So why does this paddleboard, and I know it's called, I know it's a different acronym here, why does this paddleboard meet the second prong of the test? Describing the incident as we're told to do it in an intermediate level of possible generality, why is the relationship between the operation of a paddleboard and traditional maritime activity substantial enough for admiralty jurisdiction? Well, the first thing, as you're correct, Your Honor, Judge Horwitz, is that when you look at it, you look at a broad lens, an intermediate lens. You don't get so, Gerber tells us, we don't have to categorize. No, we're not looking at the facts of this particular case necessarily to determine whether, so if your guy had crashed into, if the person on the paddleboard had crashed into a big ocean liner and it sank, that wouldn't really make a difference. We look at the general activity, which is paddleboards on navigable waters. So tell us why that meets the second prong of the test. So you look at the activity. So the first activity is navigating a vessel and operating a vessel. And Judge Morita recognized in the Northern Queen case, I don't know if that was her first decision as a district court judge sitting by designation on the Ninth Circuit, but that case involved a captain navigating his vessel and the vessel sank, he drowned. And so navigating a vessel has always been, and the case, even Gerbert says that when you have something involving a vessel, it's almost automatically assumed that it's, that that meets the connection test. How much do we focus on whether or not this paddleboard is a vessel? I think substantially because that, Gerbert says there are few exceptions. Once it's become, once you're determining that it's a vessel or an accident involving a vessel, you're really already in the area. That's the general rule. The exceptions are, for example, suppose that you're, the exceptions that we put in the brief, your honor, is that suppose you're on a, in a car waiting to be ferried and you have another car hit you on the ferry. That's not substantial enough, even though it might relate to a vessel, but that's not navigation of the vessel. My difficulty with focusing only on whether this paddleboard is a vessel, and I have no idea whether it is under traditional definitions, you say it is, they say it isn't, is that really this, this activity has nothing to do with traditional maritime activity? I mean in the, in the real world holistic sense. So you, what you're arguing is that as long as we can fit it into the box of a vessel, whether we, and, and we, you fight with the other side about what a vessel is, the analysis is over, but doesn't the court tell us to look at whether or not this affects traditional maritime activity? Of course, your honor. And, and the way that you look at that, you look at the claimants, the claimants haven't even submitted a claim yet in this case. We looked at their, their complaint in state court. They said that... Their complaint is you shouldn't have sent me out on this paddleboard because I was drunk. No. We're not capable of, I'm sorry, I'm not capable of, of doing it without further instruction. Right. I'm a 20 year old nine man who doesn't know how to swim. You should have given me more instruction on my, before I tried. Okay. So how does that have any activity, any relationship to traditional maritime activity? Because the, if, if he'd gone out to swim and they hadn't given him a sufficient life vest, would that be maritime activity? No, it would not, your honor. It wouldn't meet the test because it's not, it doesn't involve a vessel. Again, you're, you're, you're really focused on the vessel. But also the activity itself, because you're navigating, what led to the tort, the actual death or drowning was that he navigated the paddleboard in a way so that he fell off, went to, he was in the middle of the channel. He could have obstructed other vessels, but also the claimants alleged in their complaint violation of NAV rule 33 and 37, specifically that he didn't have a signaling device or a flashlight or a, the vessel wasn't lit. And the Coast Guard has already determined and made a determination, and which was cited in the brief that they're going to look at paddleboards as vessels and they require paddleboarders to have those, that equipment. Who's going to look at paddleboarders, paddleboards as vessels? The U.S. Coast Guard has determined that it's, that they look at vessel as, paddleboards as vessels, and that they require them to meet the requirements of the NAV rules. So the... Paddleboards are a lot like surfboards, although people are paddling them. If they'd rented, if he'd rented a surfboard, would we have a, an admiralty jurisdiction? It would be a closer call, but in the... I know, I'm trying to figure out where the line is. Well, in the Spencer case, the court... So why wouldn't, I mean, what's the difference between the surfboard and the paddleboard? So a surfboard is not, is, is only used in the, in the surf. It's not used as a means of transportation. It's outside the surf zone. Technically, you could argue that a surfboard is a vessel, and in fact, the Middle District of Florida, in the Davis case, said that it was. But when you say that the paddleboard can be used for transportation from one place to another, but then we have that Supreme Court language that says, you know, you have to consider from a reasonable observer, okay, and whether the reasonable observer looking to the physical characteristics of this watercraft, which I guess here is the, is the paddleboard, would consider it to be designed to any practical degree. I think that's the Lozman case, to any practical degree for carrying people or things on water. And so I guess I'm highlighting a reasonable observer and then practical degree. I mean, to what practical degree do we give effect to this paddleboard being, you know, a vessel? Well, in the Lozman... Especially when you practically concede that the surfboard is probably not. Well, Your Honor, and I have very few minutes left that I wanted to reserve on rebuttal, but to answer your question, the primary difference is the paddleboard's only function is for transportation. Yeah, you could lay on it on the beach, but it's only, its primary function is to move a person from one place to another. That's completely different than the Lozman case. Its primary function... I see a lot of paddleboarders on the beach here. Its primary function is to go out in the waves and move around in them. Nobody uses them actually to go from point A on land to point B. They go out and paddle around. Yeah. In this case, the operator used it from where he rented it from, went to a beach, then went out in the middle of the... But isn't its primary function for recreation? But that's not... Not from going to one place to another. But that's not the distinction because we have all kinds of recreational vessels that the court has long recognized that they're still considered vessels. And the difference is whether it's transit, if its primary purpose as it compared to like a barge, like a casino, like Your Honor knows that has determined that a floating casino that doesn't go anywhere, that's not a vessel. But the purpose of a paddleboard is... Its only purpose is transportation. It's to move a person from one place to another. The fact that you get enjoyment out of it doesn't distinguish it or take it out of that categorization, just like being on a princess cruise ship doesn't take it out of the categorization of a vessel. I see my time is about to expire, so I'd like to conclude at that, Your Honor. Thank you. Good morning, Your Honors. May it please the court, Lila Noel, Capello, and Noel on behalf of claimants and appellees. Your Honors, I think one of the first things the court needs to look at is the purpose as stated by the Supreme Court in numerous cases of the Limitations Act. And quoting Lewis versus Lewis and Clark Marine, it is to encourage shipbuilding and to induce capitalists to invest money in this branch of the industry. And in Norfolk Southern Railway versus James Kirby, the Supreme Court said, the fundamental interest in giving rise to maritime jurisdiction is the protection of maritime commerce. Now, Your Honor, Your Honors asked questions about the vessel and counsel addressed the vessel. Under 14 U.S.C. section 2 sub 3, it's the United States Coast Guard that is given to promulgate laws and enforce regulations. And as the district court itself noted in that footnote 1 at the bottom of the last page, in the legal determination from 2008, what the Coast Guard was looking at looked at 1 U.S.C. 3 specifically, and whether or not a specified device is a vessel. And what the Coast Guard found and stated and what the district court was referring to was that it's a paddleboard as a vessel only when it's outside the surfing, swimming, and bathing zone. In this case, the appellant itself admitted, and we submitted that as SER 2, admitted that this occurred within the harbor, within the surf zone, in the bathing zone. So it's a vessel? Do you agree that it's a vessel? No. I mean, let's say you agree that it's a vessel if it's outside this parameter. I agree that the Coast Guard has established that as the delineation. But does that make any difference to us for purposes of determining admiralty jurisdiction? I guess that's the question. Well, let's say the Coast Guard calls a garbage can a vessel if you get in it and paddle your way across the river. Does that mean there's maritime jurisdiction? If they could paddle it, it might be a close call, Your Honor, under the Lozman test. See, my problem with both sides focusing on the definition of vessel is it takes us away from the broader inquiry, which is, is this related to a judicial maritime activity? Absolutely, and I think that's where the court should focus. I was trying to address the court's question about the vessel, and it's the Coast Guard who's already said in the area where this one was, it is not a vessel. Your Honor is correct when you mentioned the... See, and my point, I'm just, not to, I want to extend that point, the area problem is solved by the fact that it's navigable waters. So if we're going to focus on area, you lose, because we all agree this is navigable waters. Whether the Coast Guard makes distinctions about what part of navigable waters it requires, lights and bells and whistles, doesn't really help us. Well, I think what the court needs to look at is the second prong of the connection test, and what the Supreme Court said in Sisson, as Your Honor noted, is you don't look at the specific facts of this case, you have to look at the general conduct. And what is the activity in this case? Are you talking about traditional maritime activity? Correct. Well, we don't believe it's traditional maritime activity. No, no, but this is what you're trying to argue. Yes. Is it on the second prong of the connection test, which is where the court found in our favor and said, therefore, they don't, it didn't have... What if he'd rented a canoe? I'm sorry, I couldn't hear you. What if your client, or the decedent, had rented a canoe? Would that be within the maritime jurisdiction of the courts? Your Honor, looking at the Lozman case, which Your Honor was referencing earlier, yes. In Lozman, it talked about, what are we talking about the characteristics of a vessel? And it said, designed to a practical degree for carrying people or things. A canoe, you can carry things in. A kayak? A kayak, you can carry things in. But a paddleboard that carries a person is not? A paddleboard, Your Honor, is basically a very thick surfboard. And query to the court, what would happen if someone took out something called a paddleboard, laid on their stomach, and did a swimming motion like this? We're not supposed to look at the facts of the case. We're supposed to look at a level of generality. It is more similar to a surfboard, which the courts have said is not a vessel. It's a boogie board, correct? A foam boogie board. Well, but there's a couple of district courts that have said, one who's in, I think it was Tennessee, that said that a paddleboard is a vessel. Another one said that a kite board is a vessel. Now, those are not precedential for our purposes, but it's still something, you know, in looking around and trying to figure out what the other courts have done here. Do we not, what do we do with that? I think Your Honors have to look at what was the activity in this case of the defendant. The activity was renting a paddleboard for recreational use within the swimming. And so what's your best case for that? Our best case would be Sisson, Lozman, certainly the Grubart case that goes through an extensive discussion of both the first and the second prong of the connection test. To the extent that any courts addressed whether a paddleboard is a vessel, they've concluded that it is, right? Is there any court that's concluded that a paddleboard is not a vessel? No, and to my knowledge, no court has concluded that it is. Well, I think the Tennessee court, unreported, yes. Eastern District of Tennessee. These weighty issues generally don't make their ways in the precedential opinions. Okay, point taken. Can you point me to any case that has extended admiralty jurisdiction to an incident that did not involve a vessel? I'm sorry, there was a negative in there. Yeah, but I'm trying to figure out if there's any case out to an incident that did not involve a vessel. To my knowledge, no, Your Honor. So the way it's the flip side is you both seem, and you're both good lawyers, so you both seem to think that vessel was the determinative issue in this case. Is there any admiralty case, is there any case that denies admiralty jurisdiction despite the fact that the court has found it to be a vessel? I believe there is, Your Honor. I think I'd have to look it up. I think there was, and it was a matter of what was going on. We're not related. The houseboat's moored at the side when somebody falls off. They say, maybe a vessel, but you're not in maritime activity. Correct, correct. Your Honors, I think the other thing that's very important to look at in this case is the activity, as Your Honor was mentioning earlier. This is a recreational activity. It is not a traditional maritime activity. But so is boating. People go out on boats. They're not necessarily going out for some particular maritime or commercial purposes. Most of the time, I'm just struggling with how we're supposed to resolve this case when you consider that. Point taken, Your Honor. But I would ask Your Honors to consider the following. Where does the line stop? If a paddleboard, as appellants contend, is a vessel and it's subject to maritime activity, how do you paddle those hand flippers? My problem with that, and I understand the slippery slope, is you tell us a canoe probably is. Under your view, we're going to have to draw a line somewhere that seems trivial. Why not draw it on the other side of your client? You said because it had a paddle, that the canoe probably, I think that's one of the factors you were looking at. Here, you have the paddleboard and somebody with the paddle. And so... Justice Hurwitz, to answer your question first, a canoe under the Lozman test is designed for carrying people and things and has the cart. So even if I take the one-person canoe or the kayak out solely for purposes of taking the sun on the bay, I'm engaged in a traditional maritime activity. But if I take the paddleboard out for exactly the same purpose, I am not. That's your position, right? Yes, Your Honor. Within the swim... You're asking us to draw a line, and therefore, your suggestion that, gee, if I draw the line here, I'm going to have to worry about surfboards next, is accurate, but I have to worry about them now. Your Honors, and back to your question, if I may briefly, consider the – not blue water boating, perhaps, in this case, but the concessionaire next door. And what they rent is those inflatable plastic swans for small children. And they give them a small oar that's this big. And in the Santa Barbara Harbor, every inch of that is a navigable water subject to the ebbs and flows of the tide. And that child goes out 10 feet and has a problem. Now, is that inflatable swan with a two-foot plastic oar, is that now a vessel subject to maritime jurisdiction? Because given what the appellants have said, that it transports people over water and has an oar, that child in that inflatable raft, that inflatable plastic swan, is no different and is subject – is a vessel, that's what they would claim – and is subject to maritime jurisdiction. And we submit that it absolutely cannot be the law in the Ninth Circuit. And I see I'm out of time. Thank you. Thank you. I'll give you a minute. And maybe you can address the swan scenario first. Your Honor, the swan scenario is a toy. That's not a means of transportation. I know you could start fitting that into that characterization, but we're talking about different – How about those – I mean, let's enhance it a little bit, the little inflatable rafts. It's not really a toy, but they give them a little paddle as well, and it's kind of like an inner tube with a bottom on it, and they get a paddle and they're out there. I'd also submit it doesn't meet the statutory definition. So the definition is a watercraft or artificial contrivance. A contrivance is something made for the purpose – a thing made for transportation. But you're not contending that the statutory definition in 1 U.S.C. 3 also defines the limits of admiralty jurisdiction, are you? No, but it does define for the court, and that was a point made in Executive Jet without – they weren't going to extend admiralty jurisdiction absent Congress' statute. Congress has specifically defined what a vessel is. So once you use Congress' definition as to what a vessel is, then you can decide whether – But I – Congress' definition with my little inner – my inner tube, okay, that's a little more than a toy, and with a paddle then you think would be a vessel. I don't – I don't think so, Your Honor. Why not? Because I don't think it's an artificial contrivance used for the purposes of transportation. Is it capable of transportation? Yes. But in this case – But that's – the definition from the Supreme Court is it's capable of transportation. I realize that, Your Honor, and I think perhaps the better course of action – Than what the Supreme Court is telling us to do? No, it's to make a factual – for the district court to make a factual record as to what the purposes were of this particular vessel. Rather than to try to decide this in the abstract based on pleadings, why don't we let the district court take on evidence on remand and see exactly what it is. Let's hear from the Coast Guard with respect to their determination. And Tagahami, I also want to mention – You can't just put this on the court district judge rather than this. No, well, it is a de novo review. I mean, you can make that determination, but I just think at this stage of the pleadings on a 12b6 motion where you're trying to make a determination of subject matter jurisdiction, the court is very – the courts of appeals say you've got to have a really good basis on the record to make a determination. This will remind me of the posture right now, though. You moved for – no. The only thing that happened was that we filed the complaint. You filed an exoneration complaint. That's it. Okay. They haven't even filed – But your complaint alleged the activity that the decedent was engaged in at the time, right? Right. In order to invoke admiralty jurisdiction. Right. And that's always – And the district court looked at that and said that's not maritime activity. Bill, should you have alleged more? That's – Because we do motions to dismiss on the complaint. Well, we could have, and we asked the district court for permission to amend the complaint. If you were going to amend the complaint, what more could you allege? The guy's on a paddleboard in Santa Barbara Harbor. Do you want to have – bring in historical evidence of the use of paddleboards for transportation? Well, that would be one – someone has navigated a paddleboard across the Atlantic Ocean, yes. We could establish that the paddleboards are very different than blow-up swans that are used for recreational enjoyment purposes that aren't capable to go outside of the surf zone in normal use. I guess they'd be used in Hawaii to go between islands. I know you're out of time, but I did want to ask you the same question. I asked your friend here across the aisle, and can you point me to any case that has extended admiralty jurisdiction to an incident that did not involve this? Yes, Your Honor. I did mention it in the opening, and it's the Patrion case where there was a motorist that got rear-ended while he was on a barge waiting for a ferry, and the court in that case said that's too much of an extension to find admiralty jurisdiction. But in every other case, there is a case in Hawaii that was cited in the briefs where somebody was scuba diving. Again, the activity had nothing to do with operating, navigating a vessel. The search and rescue in Taganami, the court said that there was people operating a kayak, and maybe that was or was not, but certainly the search and rescue efforts that were involved invoked admiralty jurisdiction. I think those all involved vessels, right? It was a kayak. Yeah, well, I mean, arguably vessels. Okay, thank you very much. Appreciate both of your presentations here today and the arguments that you have presented in support of your your case. The case of Blue Water Boating versus Agnes Mubanda is now submitted.
judges: Murguia, Hurwitz, Guirola